UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DONAVEN MEADOWS, | ) |
| Petitioner, | ) ) ) |
| v. | ) ) Case No. 1:22-cv-00254-TWP-MG |
| UNITED STATES OF AMERICA, | ) ) ) |
| Respondent. | ) |

**ORDER ON MOTION FOR RELIEF UNDER 28 U.S.C. § 2255
AND DIRECTING FURTHER PROCEEDINGS**

This matter is before the Court on *pro se* Petitioner Donaven Meadows ("Mr. Meadows") Motion to Vacate, Set Aside or Correct a Sentence by a Person in Federal Custody, under 28 U.S.C. § 2255 (Dkt. 1). In 2020, Mr. Meadows pled guilty to Count 1: Felon in Possession of Ammunition and Count 2: Felon in Possession of a Firearm and Ammunition. He is serving a sentence of 90 months on each count, to be served consecutively, for a total sentence of 180 months imprisonment. Mr. Meadows asks the Court to vacate his sentence because he did not receive effective assistance from his attorney. Specifically, Mr. Meadows contends his trial counsel failed to contest certain determinations underlying his sentence and then failed to file an appeal as he had instructed. For the reasons explained below, the Court determines that these issues require further development and an evidentiary hearing.

**I. THE § 2255 MOTION**

A motion pursuant to 28 U.S.C. § 2255 is the presumptive means by which a federal prisoner can challenge his conviction or sentence. *See Davis v. United States*, 417 U.S. 333, 343 (1974). A court may grant relief from a federal conviction or sentence pursuant to § 2255 "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United

States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).  "Relief under this statute is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citing *Prewitt v. United States*, 83 F.3d 812, 816 (7th Cir. 1996); *Barnickel v. United States*, 113 F.3d 704, 705 (7th Cir. 1997)).

## II. BACKGROUND

On June 2, 2020, Mr. Meadows filed a Petition to Enter a Plea of Guilty without the benefit of a plea agreement. *United States v. Donaven Meadows*, No. 1:19-cr-00037-TWP-DLP ("Crim. Dkt."), (Crim Dkt. 45).  A change of plea hearing was held on July 22, 2020, during which Mr. Meadows entered a plea of guilty to Count 1: Felon in Possession of Ammunition and Count 2: Felon in Possession of Firearm and Ammunition in violation of 18 U.S.C. § 922(g)(1).  (Crim. Dkt. 53 at 2.)  At his change of plea hearing, Mr. Meadows agreed to the factual basis summarized below(*see* Crim. Dkt. 86 at 16 *et seq.*).

In the early evening of November 21, 2018, Mr. Meadows shot a man at a gas station in Indianapolis, Indiana, and then fled from the scene in a vehicle. Officers who reviewed security video believed Mr. Meadows and the victim transacted a drug deal inside the gas station's convenience store. Mr. Meadows made an aggressive movement toward the victim and displayed a handgun tucked into his waistband. Mr. Meadows then exited the store, waited in his truck, and shot the victim in the torso after he exited the building. The victim survived the shooting.

Two weeks later, officers responded to a reported domestic disturbance in Indianapolis. Mr. Meadows was arrested following a traffic stop at the scene and was found with a handgun and

ammunition. Investigators recognized Mr. Meadows from the gas station video, and they discovered that the gun confiscated from Mr. Meadows was used in the gas station shooting.

Mr. Meadows was charged in Marion Superior Court with possessing a firearm as a serious violent felon, battery by means of a deadly weapon, and criminal recklessness. *State of Indiana v. Donaven Meadows*, Cause No. 49G05-1812-F4-043044.  The Court is not aware of any charges from the December 5, 2020 domestic disturbance.  Mr. Meadows was indicted on the two felon-in-possession charges in this Court in February 2018, (Crim. Dkt. 11), at which point his state charges were dismissed.

Criminal Justice Act counsel Finis Tatum IV ("Mr. Tatum") was appointed and represented Mr. Meadows throughout the case. (Crim. Dkt. 26.)  Because Mr. Meadows pled guilty without a plea agreement, there were no sentencing parameters to his plea of guilty.

A United States Probation Officer prepared a presentence investigative report ("PSR") and calculated a base offense level of 33 for the Count Group, pursuant to the cross reference at §2K2.1(c)(1)(A), §2A2.1 (attempted murder) which is used to determine the offense level because it results in a higher offense level. (Crim. Dkt. 59 at 7 ¶ 22.)  The Probation Officer calculated a criminal history category of III, producing an advisory guidelines range of 151–188 months per count. (Crim. Dkt. 59 at 13 ¶ 70.)  Not every step in that determination is material to the § 2255 motion, but two stand out as potentially significant.

First, Mr. Meadows was indicted on two counts of felon-in-possession—one stemming from the November 21, 2020 gas station shooting in which he admitted to possessing ammunition—and one stemming from the December 5, 2018 domestic disturbance in which he admitted to possessing a firearm and ammunition. (Crim. Dkt. 11.) The Probation Officer determined that the two counts should be "grouped" pursuant to United States Sentencing Guidelines ("the Guidelines" or "U.S.S.G.") § 3D1.2(d).  Under § 3D1.2, "[a]ll counts involving

3

substantially the same harm shall be grouped together into a single Group." Under § 3D1.2(d), counts "involve substantially the same charge" when "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm."  Counts also "involve substantially the same charge" when "the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." *Id*.  Guidelines § 3D1.2(d) specifically lists felon-in-possession charges among those that "are to be grouped," but it also lists homicides and assaults as offenses that are "excluded" from the grouping provision.

Second, the Probation Officer determined a base offense level of 33 for each count based on the "cross-reference" provisions of U.S.S.G § 2K2.1(c). (Crim. Dkt. 59 at 7 ¶ 22.) This provision instructs that, if the firearm or ammunition underlying a felon-in-possession charge is used or possessed in connection with another crime, that crime provides the base offense level. The Probation Officer proposed that the base offense level for both counts should be that associated with attempted murder, which is level 33. (Crim. Dkt. 59 at 7 ¶ 22 (applying Guidelines § 2A1.1(a)).)

Mr. Tatum did not object to the grouping of the two counts under U.S.S.G. § 3D1.2(d) and he did not object to the application of the same base offense level to both counts.

Mr. Tatum did raise objections to certain aspects of the PSR. (Crim. Dkt. 59 at 19–21; Crim. Dkt. 68). He objected to applying the base offense level for attempted murder and suggested aggravated assault was "more appropriate." (Crim. Dkt. 59 at 19.) However, he cited no authority and articulated no argument to support his objection. *Id.* Importantly, Mr. Tatum withdrew that objection (as well as others) without any explanation before the sentencing hearing. (Crim. Dkt. 68 at 4.) Thereafter, the discussion at the sentencing hearing was as follows:

> THE COURT: And, Counsel, you have filed several objections, but in your sentencing memorandum it appears that you are withdrawing some of those objections; is that correct?
>
> MR. TATUM: That is correct, Your Honor.
>
> THE COURT: Well, let's look at your objections. Your objection number one was to paragraphs 12 and 14. Mr. Meadows disputes that shots were fired towards a group of three people, and he denies any involvement in the domestic disturbance. Does he still deny that the shots were fired towards the group of three people?
>
> MR. TATUM: Let me ask him real quick, Your Honor.
>
> THE COURT: Okay.
>
> (Off the record.)
>
> MR. TATUM: Your Honor, with respect to paragraphs 12 and 14, my client withdraws the objection about the shots being fired towards a group of three people, and he – he still denies that he had any involvement with regard to the domestic violence disturbance that took place on December the 5th, 2018.

(Crim Dkt. 88 at 4-5.)

> COURT: …Your objection number two is to paragraphs 22, 27, and 31. Mr. Meadows had no intent to murder Mr. Williams and he therefore objects to the cross-reference to Section 2A2.1 for an attempted murder. He believes that a cross-reference to aggravated assault under Section 2.22 – I'm sorry, 2A2.2, is more appropriate. He does not dispute that the victim sustained a serious bodily injury. Do you still have that objection?
>
> MR. TATUM: Well, Your Honor, my client maintains he didn't have any intent to murder Mr. Williams. He does believe that aggravated assault would be more appropriate. However, looking at the case law in this jurisdiction, he's going to withdraw the objection with respect to 2A2.1, attempted murder, and he asserts that he was acting in self-defense. He still doesn't dispute – or he still doesn't dispute that the victim sustained a serious bodily injury.
>
> THE COURT: All right. Well, since he's saying it was self-defense, that wouldn't be attempt murder. So, Government, do you have an argument or any evidence on that issue?
>
> MR. PRESTON: My understanding was that he was going to admit the guideline enhancement, but yet, under the factors of 3553(a), explain to the Court some aspects of his mental state and what preceded or precipitated the events in question.
>
> THE COURT: Is that correct?

5

>MR. TATUM: That's correct, Your Honor.
>
>THE COURT: All right.
>
>MR. TATUM: That's how we wrote it in the sentencing memorandum.
>
>THE COURT: So he agrees that the cross-reference A – I'm sorry, 2A2.1 applies?
>
>MR. TATUM: That's correct.
>
>THE COURT: Okay. All right. And then – so does he object to the calculation in paragraphs 27 and 21 – I'm sorry, and 31? 27, that would be – 27 is – the adjusted offense level would be 35. And 31, the total offense level of 32.
>
>MR. TATUM: He no longer objects to that, Your Honor.

(Crim Dkt. 88 at 5-12.)

At sentencing, Mr. Tatum presented testimony from Mr. Meadows in an effort to show that the gas station shooting was an act of self-defense. (*See* Crim. Dkt. 94 at 15–18.) The Government introduced into evidence the security video from the incident, and the Court found Mr. Meadows' testimony was directly contradicted by the gas station's security video. *Id.* at 32–33. In any event, the purpose of the self-defense argument is not evident. Mr. Tatum did not contend, for example, that Mr. Meadows' base offense level should not be that associated with attempted murder because he lacked the requisite mental state. Instead, he conceded that attempted murder provided an appropriate base offense level but argued that self-defense should be considered a mitigating factor under 18 U.S.C. § 3553, based only on a decision from a different district court. *Compare id.* at 6–7 *to id.* at 32–33.

Mr. Meadows also offered testimony that the shooting was part of a psychotic episode. *See id.* at 22–23. Rather than offer argument based on that evidence—again, for example, that Mr. Meadows lacked the *mens rea* required of attempted murder—Mr. Tatum persisted with a self-defense argument that the Court dismissed as he made it. *See id.* at 30–33.

6

The Court accepted the Guidelines range calculated by the Probation Officer. *Id.* at 9–10. The Government argued for a sentence of 188 months, consecutive sentences on Counts 1 and 2 under Guideline §5G1.2 based on multiple counts of conviction. *Id*. at 43. The Court determined that a sentence at the "high end" of the Guidelines range was appropriate and sentenced Mr. Meadows to 90 months on each count, to run consecutively. *Id.* at 44-51.

Mr. Meadows maintains throughout his § 2255 motion—which is verified under penalty of perjury—that he instructed Mr. Tatum to file an appeal. (Dkt. 1 at 4, 6, 7, 10, 13.) Mr. Tatum denies that allegation in an affidavit. (Dkt. 8-1 at 2.)

### III. DISCUSSION

Read liberally, Mr. Meadows asks for relief on two grounds. First, he contends Mr. Tatum never filed a notice of appeal to challenge his sentence despite his instructions to do so. Second, he contends his counsel failed to raise challenges that may have led to a substantially shorter sentence. *See* Dkt. 1 at 4 ("I feel like my lawyer was ineffective because he never argued valid points/cases that could have changed the outcome of my sentence."), and at 5 ("I feel like I received [too] much time because they stacked my charges on top of one another and I was sentenced based on a crime that I was never convicted of.").

A § 2255 movant claiming ineffective assistance of counsel bears the burden of showing (1) that counsel's performance fell below objective standards for reasonably effective representation and (2) that this deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 688–94 (1984); *Resnick v. United States*, 7 F.4th 611, 619 (7th Cir. 2021). If a petitioner cannot establish one of the *Strickland* prongs, the court need not consider the other. *Groves v. United States*, 755 F.3d 588, 591 (7th Cir. 2014).

To assess counsel's performance, the court must "apply an objective standard of reasonableness considering all the circumstances." *Bridges v. United States*, 991 F.3d 793, 803

7

(7th Cir. 2021). On the prejudice prong, a petitioner "must show that but for counsel's errors, there is a reasonable probability that the result would have been different." *Perrone v. United States*, 889 F.3d 898, 908 (7th Cir. 2018) (cleaned up). It is fundamental that the § 2255 movant faces the burden of demonstrating both deficient performance and prejudice. *See, e.g.*, *Williams v. United States*, 879 F.3d 244, 249 (7th Cir. 2018) ("To demonstrate prejudice, Williams had the burden to show a reasonable probability" of a different outcome "but for the failure by his counsel."); *Faucett v. United States*, 872 F.3d 506, 509 (7th Cir. 2017) ("Under … *Strickland* …, it was Faucett's burden to show that his attorney's performance was deficient and that he suffered prejudice as a result."); *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013) ("A party asserting ineffective assistance of counsel bears the burden of establishing" both deficient performance and prejudice.); *Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993) ("Because counsel is presumed effective, the petitioner bears a heavy burden to prove that his counsel was ineffective and that his defense was actually prejudiced."); *United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993) ("Further proceedings on this subject would be a waste of time, because Springs has no prospect of establishing the 'prejudice' that is an element of his burden under the sixth amendment."); *United States v. Davenport*, 986 F.2d 1047, 1049 (7th Cir. 1993) ("[T]he burden of both proof and persuasion is" the movant's). The Court will address Mr. Meadows' arguments in turn.

**A.     Failure to File Notice of Appeal**

When "a defendant has expressly requested an appeal, counsel performs deficiently by disregarding the defendant's instructions." *Garza v. Idaho*, 139 S. Ct. 738, 747 (2018). When this deprives the defendant of an appeal that he otherwise would have taken, he has been prejudiced, regardless of the merits of any appellate issue or whether the defendant agreed to waive his right to appeal. *Id.* at 747. In such a case, the defendant is entitled to file a notice of appeal. *Id.* at 749.

*Garza* was straightforward, controlling United States Supreme Court precedent before judgment was entered in Mr. Meadows' case. Mr. Meadows attests under oath that he instructed Mr. Tatum to file notice of appeal, and Mr. Tatum attests under oath that he did not. Such a dispute may only be resolved at an evidentiary hearing. *Johnson v. United States*, No. 16-1651, 2017 WL 3379753, at *1 (7th Cir. Jan. 20, 2017) ("[T]he district court should have held an evidentiary dispute to resolve the dispute" where § 2255 movant's verified petition would have entitled him to relief but were contradicted by defense counsel's affidavit.). Accordingly, an evidentiary hearing will be held so the Court can resolve the dispute on this claim.

**B.     Sentencing Issues**

Mr. Meadows also contends that Mr. Tatum "never argued valid points/cases that could have changed" his sentence. (Dkt. 1 at 4.) More specifically, he states that "they stacked [his] charges on top of one another" and that he "was sentenced based on a crime that [he] was never convicted of." *Id.* at 5.

The Government asks the Court to deem these arguments waived because Mr. Meadows cites no evidence to support them, and he has not articulated "specifically how these claims would change the outcome of his case." (Dkt. 8 at 13.) Read in context, though, Mr. Meadows' petition points to debatable applications of the U.S.S.G. that Mr. Tatum did not oppose and that left Mr. Meadows with a longer sentence than he might have faced otherwise.

"[A]n attorney's unreasonable failure to identify and bring to a court's attention an error in the court's Guidelines calculations that results in a longer sentence may constitute ineffective assistance entitling the defendant to relief." *United States v. Jones*, 635 F.3d 909, 916 (7th Cir. 2011). The sentencing issues Mr. Meadows has raised are complicated, and it is by no means obvious that Mr. Tatum fell below the Sixth Amendment's standards when he failed to pursue them. However, the record reveals potential paths to a significantly shorter sentence, and Mr.

9

Tatum did not pursue them. Given that the case must proceed to a hearing on the notice-of-appeal issue, it is only prudent to further develop these issues affording Mr. Meadows assistance from counsel.

### 1. Base Offense Level and Cross-Reference to Attempted Murder

Mr. Tatum might have—but did not—challenge the decision to cross-reference attempted murder when calculating Mr. Meadows' base offense level. Application of the Guidelines to Mr. Meadows' case was not straightforward. A review of the Guidelines and relevant case law suggests that Mr. Meadows may have received a substantially shorter sentence had counsel challenged the base offense level calculated in the PSR and applied by the Court.

Standard offense level calculation for a felon-in-possession offense begins at 26 and increases or decreases based on specific factors. U.S.S.G. §§ 2K2.1(a) and (b) (eff. Nov. 1, 2018). Because Mr. Meadows pled guilty to possessing a firearm and ammunition that he used in other criminal acts—the November 21, 2018 gas station shooting and the December 5, 2018 domestic disturbance—his offense starting point was the "cross-reference" provisions of U.S.S.G. §§ 2K2.1(b)(6) and (c). The cross-reference provisions cover three situations:

- If death results from the related criminal act, the base offense level is that which applies to the most analogous homicide offense guideline. Guidelines § 2K2.1(c)((1)(B).

- If the related act could have been charged as a felony, but death did not result, the offense level is calculated through the standard process but is subjected to a four-level enhancement and cannot be lower than 18. Guidelines § 2K2.1(b)(6)(B).

- If the most analogous offense would be an attempt, solicitation, or conspiracy, and if death did not result, the attempt Guidelines apply, and they begin with the offense level for the substantive offense. Guidelines § 2K2.1(c)(1)(A), § 2X1.1.

When the Probation Officer prepared the PSR, she applied the third provision and cross-referenced attempted murder, which carries a base offense level of 33. (Crim. Dkt. 59 at 7 ¶ 22.)

Mr. Tatum initially objected on grounds that aggravated assault was a "more appropriate" cross-reference. (Crim. Dkt. 59 at 19.) However, he cited no authority and articulated no argument to support his objection. *Id.* Mr. Tatum withdrew that objection before the sentencing hearing without any explanation, and the Court used the base offense level of 33 as recommended in the PSR. (Crim. Dkt. 68 at 4, 8.)

A brief review of the Guidelines, the relevant statutes, and case law suggests Mr. Tatum may have had avenues to meaningfully oppose application of the attempted murder Guideline.

The Guidelines themselves raise questions as to whether attempted murder was the proper cross-reference. Guidelines § 2A1.5(c)(2) directs that § 2A2.1 applies if the offense "resulted in an attempted murder or assault with intent to commit murder." Guidelines § 2A2.1(a)(1) applies a base offense level of 33—but only "if the object of the offense would have constituted first degree murder."

Federal law defines first degree murder as "the unlawful killing of a human being with malice aforethought," 18 U.S.C. § 1111(a), which "means to act without regard to the life of another or to take someone's life deliberately and intentionally." *United States v. Turnipseed*, 47 F.4th 608, 614 (7th Cir. 2022).[1] Moreover, "[w]hen it comes to attempted murder,… the government must prove that the defendant acted with a 'specific intent to kill'—a more culpable mental state than the 'malice aforethought' required for murder." *United States v. Grant*, 15 F.4th 452, 458 (7th Cir. 2021).

Factually, there were reasons to argue whether Mr. Meadows acted with malice aforethought or specific intent to kill. Most glaringly, Mr. Meadows was charged in state court

---

[1] Although the gas station shooting did not fall within federal criminal jurisdiction, "courts use the definition set forth in § 1111 for simplicity's sake." *United States v. Thomas*, 280 F.3d 1149, 1156 (2002).

11

with battery by means of a deadly weapon and criminal recklessness, neither of which requires malice aforethought or specific intent to kill. And Mr. Meadows himself presented evidence concerning his mental state at the sentencing hearing.

When a district court makes calculations under the Guidelines, it must make factual findings that are "supported by a preponderance of the evidence." *United States v. Galvan*, 44 F.4th 1008, 1012 (7th Cir. 2022). More specifically, it must make findings to support its selection of an analogous offense under the cross-reference provisions.[2] Mr. Tatum may have had factual and legal bases to contest the findings that would have been necessary to apply the attempted murder cross-reference. Instead, without explanation, he folded his hand.

Further development of this issue may reveal that Mr. Tatum's approach was justified. At minimum, though, the petition and the sentencing record reveal a colorable issue that should be developed after counsel has been appointed for Mr. Meadows.

### 2. Grouping Counts

Mr. Tatum also might have challenged the decision to group Mr. Meadows' two felon-in-possession counts under the Guidelines. Even if the attempted murder cross-reference was appropriate for the charge associated with the gas station shooting, there is ample reason to question whether it was appropriate for the charge associated with the domestic disturbance incident. Mr. Tatum did not object to grouping the counts, and Mr. Meadows received consecutive sentences, each calculated from the attempted murder offense level.

---

[2] *See Thomas*, 280 F.3d at 1155–58 ("The district court did not make any findings as to Thomas's state of mind, or his degree of planning or preparation. The court relied on the unchallenged factual findings and conclusions of the PSR, which does not lay out the elements of first degree murder or discuss how the facts relate to those elements. . . . Because the district court made no findings to support premeditation, the district court's selection of first degree murder as the most appropriate homicide guideline must be remanded for further proceedings.").

Under Guidelines § 3D1.2, "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." Under § 3D1.2(d), counts involve substantially the same harm when "the offense level is determined largely on the basis of the total amount of harm or loss, the quantity of a substance involved, or some other measure of aggregate harm." Counts also "involve substantially the same charge" when "the offense behavior is ongoing or continuous in nature and the offense guideline is written to cover such behavior." *Id.* Guidelines § 3D1.2(d) specifically lists felon-in-possession charges among those that "are to be grouped," but it also lists homicides and assaults as offenses that are "excluded" from the grouping provision. In short, "most property crimes . . . , drug offenses, firearms offenses, and other crimes where the guidelines are based primarily on quantity or contemplate continuing behavior are to be grouped together." U.S.S.G. § 3D1.2, application note 6.

The grouping rules "are not applied in the abstract; they come into play *after* the offense level for each count in the case has been determined." *United States v. Sinclair*, 770 F.3d 1148, 1157 (7th Cir. 2014) (emphasis in original). They are "meant to avoid multiple punishments for the same conduct." *United States v. Jackson*, 741 F.3d 861, 864 (7th Cir. 2014). For example, if a defendant is convicted of gun and drug crimes, grouping prevents the defendant from receiving a gun sentence *and* a drug sentence enhanced by possession of the gun. *See United States v. Mahalick*, 498 F.3d 475, 481 (7th Cir. 2007) (discussed throughout *Jackson*, 741 F.3d 861). "When courts group several counts to which different guidelines apply, they calculate the base offense level using the count that would produce the highest offense level. The other counts *essentially fall away for sentencing purposes*." *Id.* (emphasis added).

The Guidelines were not so applied in Mr. Meadows' case. The PSR begins with an unexplained assumption that the two counts should be grouped under Guidelines 3D1.2(d). (Crim. Dkt. 59 at 7 ¶ 21.) The PSR does not offer any factual basis—and the Court was not asked

13

to make any factual findings—to support a conclusion that the November 21, 2018 gas station shooting and the December 5, 2018 domestic disturbance involved substantially the same harm, an aggregate loss or harm, or ongoing or continuous behavior. *See* U.S.S.G. § 3D1.2(d) [3].

Because grouping was assumed from the beginning, the offense levels for Mr. Meadows' two counts were never calculated separately. *See Sinclair*, 770 F.3d at 1157. The Court does not have a record from which to calculate a separate offense level for the counts associated with the December 5, 2018 domestic disturbance. However, if calculated under the basic provisions of § 2K2.1(a) instead of the cross-reference provision, the base offense level for that charge could have been as low as 6.

Because Mr. Meadows' counts were grouped *and* he received consecutive sentences, he did not "avoid multiple punishments for the same conduct." *Jackson*, 741 F.3d at 864. After the Court applied the attempted murder cross-reference to the charge associated with the gas station shooting, the second charge did not "essentially fall away." *Mahalick*, 498 F.3d at 481. Instead of receiving concurrent sentences based on the attempted murder guideline or even one sentence based on the attempted murder guideline and a much shorter consecutive sentence, Mr. Meadows received two consecutive sentences derived from the attempted murder guideline. Yet Mr. Tatum

---

[3] The facts connecting the November 21, 2018 incident and the December 5, 2018 incident located in Paragraph 14 of the PSR state as follows:

> On December 5, 2018[,] an [Indianapolis Metropolitan Police Department ("IMPD")] detective was contacted by an IMPD officer who advised that he and other IMPD officers had responded to a domestic disturbance in the 4100 block of Meadows Drive, in Indianapolis. While on the scene, the officers were told by a citizen that the two males involved in the domestic disturbance, Donaven Meadows and Derrick Perkins, had shot someone at East 42nd Street and Mithoeffer Road approximately two weeks prior. The shooting of Larry Williams occurred at this intersection. IMPD officers then located the vehicle the defendant was traveling in, conducted a traffic stop and searched the vehicle. The officers found a 9mm handgun in the vehicle that Donaven Meadows was driving.

(Crim Dkt. 59 at 6 ¶ 14). There is no specific factual basis explaining why this paragraph might support grouping of Counts 1 and 2.

never opposed the grouping of the counts or the application of consecutive sentences. On this issue, further development may reveal that Mr. Tatum's approach was justified. But this is not a black and white issue.

As calculated, the top of Mr. Meadows' Guidelines range was 188 months, and he received consecutive 90-month sentences, for a total of 180 months. As with applying the attempted murder cross-reference, though, the grouping issue warrants further development before the matter proceeds to a hearing.

## IV. <u>CONCLUSION</u>

The resolution of this action requires a credibility determination and thus an evidentiary hearing is necessary. Specifically, an evidentiary hearing is required to determine whether Mr. Meadows instructed Mr. Tatum to file a notice of appeal. Moreover, additional briefing is warranted concerning counsel's failure to challenge the grouping of Mr. Meadows' two felon-in-possession counts under the Guidelines.

The Indiana Federal Community Defender ("IFCD") is appointed pursuant to 18 U.S.C. § 3006A to represent Mr. Meadows in this case. The **IFCD shall have seven (7) days** from the date this Entry is docketed, in which to appear in this action. Should the IFCD be unable to represent Mr. Meadows, substitute CJA counsel may seek leave to appear on his behalf pursuant to 18 U.S.C. § 3006A(a)(2)(B).

Counsel for Mr. Meadows will have **through Friday, August 11, 2023**, to file a supplemental brief addressing the three issues that remain in this action. Those issues are whether Mr. Meadows was deprived of effective assistance of counsel in relation to (a) filing a notice of appeal; (b) applying a base offense level of 33 pursuant to Guidelines §§ 2A2.1, 2A1.5(c)(2) and 2K2.1(c)(1)(A); and (c) grouping his counts pursuant to Guidelines § 3D1.2(d).

The Court will schedule the hearing and set pre-hearing deadlines by separate Order after supplemental briefing is complete. In the interim, once counsel appears, the parties are encouraged to confer to determine if a stipulation can be reached in this case.

**SO ORDERED.**

Date:   6/23/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Donaven Meadows, #16856-028
TERRE HAUTE FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
P.O. Box 33
Terre Haute, Indiana  47808

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeffrey.preston@usdoj.gov

INDIANA FEDERAL COMMUNITY DEFENDERS
111 Monument Circle, Suite 3200
Indianapolis, Indiana  46204